IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Linda Gordon,** ) | |
| Plaintiff, ) | |
| ) | No. 18 C 2578 |
| v. ) | |
| ) | Judge Martha M. Pacold |
| **Louis DeJoy,** ) | |
| **Postmaster General of the** ) | |
| **United States Postal Service,** ) | |
| Defendant.[1] ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda M. Gordon, a retired Postal Service employee, filed a complaint alleging failure to accommodate her disability, forced retirement (constructive discharge), sex discrimination, harassment based on age and disability, and retaliation. Defendant has filed a motion for summary judgment. [43]. For the reasons below, the motion is granted.

## Background

The Court recites general background facts here and discusses additional facts as necessary in the analysis section below.[2]

Gordon began her employment with the United States Postal Service at the Harrison Street facility in Chicago in July 1985. In 2004, Gordon bid for and was accepted into a clerk position at the Postal Service's Chicago Fort Dearborn Station facility. In January 2013, Gordon applied for disability retirement,[3] which was approved in December 2013.

---

[1] Louis DeJoy, current Postmaster General, has been substituted as the named defendant. *See* Fed. R. Civ. P. 25(d).

[2] Defendant emphasizes throughout his briefs that certain facts Gordon disputes on summary judgment are contained in the Joint Statement of Undisputed Fact and thus improperly disputed. In its discretion, due to Gordon's pro se status, the Court will address Gordon's stated disputes as necessary in the context of this order to the extent they are otherwise properly before the Court under the Federal Rules of Civil Procedure.

[3] Gordon's retirement application does not indicate the disability upon which her request rested. (Joint Stmt. Undisputed Facts, Dkt. # 45, Ex. A, Gordon Dep., Ex. 3, Page 72 of 101.) However, an unauthenticated September 4, 2013 letter from Gordon's physician, Dr. Steven Wolf, states he has "recommended [that] she seek a medical retirement" based on

On April 9, 2012 (before she applied for disability retirement), Gordon filed an administrative complaint of discrimination, No. 4J-606-0063-10 ("April 2012 charge"), alleging that the Postal Service discriminated against her on the bases of disability, age, and in retaliation for prior protected activity. Specifically, Gordon alleged that between January 2010 and March 2010 and between June 30, 2011, and March 31, 2012, she was harassed by her coworkers and management in the following ways: management watched Gordon and scrutinized her work more closely than her coworkers; on January 4-6, 2010, management marked Gordon's leave as unscheduled and charged her "absent without leave" for three days; on January 14, 2010, management harassed Gordon about her PS 3971 leave form; on January 15, 2010, management harassed Gordon about her leave documentation; beginning in January 2010, management forced her out of her bid assignment and reassigned her to work on jobs outside of her medical restrictions; when Gordon complained on February 6, 2010 about irritation from an unknown substance in the workplace, her complaint was not taken seriously or investigated by management; and on March 29, 2012, Gordon was scheduled for a Fitness for Duty Exam to be taken on April 3, 2012.

At the conclusion of the ensuing investigation of Gordon's administrative complaint, the Postal Service provided Gordon with a copy of the report of investigation and notice of her right to request a hearing before an EEOC administrative judge.

An administrative judge held a hearing on Gordon's administrative complaint of discrimination on July 17 and July 24, 2013. Prior to or during the hearing, Gordon never raised claims that she was discriminated against based on her national origin or gender, or that she was forced to retire from the Postal Service.[4]

On September 17, 2014, the administrative judge issued her decision, concluding that: Gordon failed to demonstrate a hostile work environment because she did not establish that the purported harassment occurred because of her disability, age, or prior protected activity, or that the alleged harassment was anything more than routine workplace interaction; Defendant had appropriately

---

recurring "symptoms and findings of hand and wrist pain and swelling . . . due to the nature of chronic tenosynovitis." (Gordon Decl., Dkt. # 56, Ex. 7, Page 53 of 77.)

[4] Gordon contends that she raised these claims in her motion to appeal the decision of the EEOC administrative judge. But for purposes of exhaustion, the relevant claims are those alleged in her April 2012 charge (here, as discussed below, those listed in the EEOC administrative judge's decision), not subsequently raised issues. *Hua v. Arthur J. Gallagher & Co.*, 20 C 6921, 2023 WL 3763527, at *13 (N.D. Ill. June 1, 2023) ("Much like a discrimination claim under the ADA, to make out a retaliation or failure to accommodate claim, [a plaintiff] must exhaust her administrative remedies, including filing an EEOC charge with those claims.").

investigated Gordon's allegations of a chemical substance in the workplace by calling OSHA inspectors and moving Gordon to a different work location; there was no evidence that Gordon was required to work outside of her bid assignment, and the judge noted Gordon's own statement that she did not perform work outside of her medical restrictions; Defendant had ordered the fitness-for-duty examination because of Gordon's complaints and erratic behavior, including her continued insistence that she had been exposed to a chemical substance despite OSHA's conclusion to the contrary and Gordon's claim that her coworkers and supervisor in her new work location were spraying her with chemicals; and Gordon had not established that the reason Defendant had ordered the examination was pretextual. (9/17/2014 EEOC Admin. Judge Dec., Dkt. # 45, Page 46 of 101.)

The Postal Service issued a final decision adopting the EEOC administrative judge's finding of no discrimination. On October 23, 2014, Gordon filed an appeal with the EEOC's Office of Federal Operations ("OFO"). On August 3, 2017, the OFO affirmed the Postal Service's final order implementing the administrative judge's findings. (*Id.*, Page 92 of 101.) Gordon filed a motion to reconsider, which the OFO denied on January 5, 2018.

Gordon then filed this lawsuit, alleging that Defendant discriminated against her based on her age, disability, national origin, and sex. According to Gordon's complaint, Defendant failed to reasonably accommodate her disability, failed to stop the harassment, retaliated against her for engaging in protected activity, and forced her to retire based on disability.[5] Defendant moves for summary judgment on all claims.

## Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted).

## Analysis

As an initial matter, the Court notes that Gordon's memorandum in opposition to summary judgment is brief and only superficially discusses the

---

[5] Gordon withdrew her discrimination claim based on national origin. (Dkt. ## 41, 53.)

relevant issues. In addition, as detailed by Defendant, (Def.'s 2d Reply, Dkt. # 58, at 2-8), many of the exhibits to which Gordon refers in her declaration in support of her opposition are inadmissible hearsay, irrelevant, lack foundation, or do not support the fact asserted. Although Gordon is proceeding pro se, she must still "follow court rules and directives." *McInnis v. Duncan*, 697 F.3d 661, 665 (7th Cir. 2012). The Court has construed the evidence in a light most favorable to Gordon and has attempted to accord every consideration possible to Gordon's filings in order to fully address her claims. Nevertheless, the Court has also applied the Federal Rules of Civil Procedure, to which both parties are bound, in its analysis of Defendant's motion.

The Court also briefly addresses exhaustion because the issue is raised several times in Defendant's briefs. A plaintiff generally must exhaust claims of discrimination prior to filing suit, which is done by filing a charge with the EEOC. *See Marinov v. Int'l Union of United Auto., Aerospace & Agr. Implement Workers of Am.*, No. 4:18 CV 59, 2020 WL 1887938, at *2 (N.D. Ind. Apr. 16, 2020) ("A plaintiff must file a charge with the EEOC before bringing a claim against his employer under the ADEA or ADA."); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) ("Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter."). Here, Gordon's April 2012 charge is not included in the record. Instead, Defendant discusses Gordon's failure to raise issues during "the EEO process," (Def.'s Mem. Supp. Mot. Summ. J., Dkt. # 44, at 13; Def.'s Reply, Dkt. # 50, at 1, 14; Def.'s 2d Reply, Dkt. # 58, at 2, 12), using the issues set forth in the EEOC administrative judge's decision as those raised by Plaintiff in her April 2012 charge. Because Gordon does not dispute that the issues set forth by the EEOC administrative judge in her decision are those that were included in Gordon's April 2012 charge, (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 56, ¶¶ 6-9), the Court follows suit and assumes for purposes of this motion that the claims addressed by the EEOC administrative judge align with those in Gordon's April 2012 charge.

The Court now turns to the claims raised in Gordon's complaint: failure to accommodate her disability; forced retirement (constructive discharge); sex discrimination; harassment based on age and disability; and retaliation.

## I. Failure to Accommodate

Although Gordon checked the box on the template complaint alleging a failure to accommodate her disability, the administrative judge interpreted Gordon's disability discrimination claim only as alleging harassment and retaliation based on her disability, not a failure to accommodate. (9/17/2014 EEOC Admin. Judge Dec., Dkt. # 45, Page 47 of 101.) Accordingly, Gordon's claim of failure to accommodate her disability has not been exhausted, and the Court dismisses it without prejudice.

4

## II. Forced Retirement (Constructive Discharge)

Gordon alleges that she was "forced out on disability retirement" and that her doctor recommended that she "retire on disability" "due to ongoing daily harassment and retaliation . . . due to [her] disability after filing a complaint." (Compl., Dkt. # 9, at 4-5.) Defendant argues that the claim should be dismissed for failure to exhaust. "[D]istrict courts have routinely found constructive discharge claims unexhausted if the EEOC charge was filed prior to the plaintiff's resignation and the plaintiff did not amend her charge or otherwise bring the resignation to the EEOC's attention during the investigation process." *Shuler v. McCarthy*, No. 419CV04106SLDJEH, 2019 WL 13171974, at *3 (C.D. Ill. Nov. 12, 2019). Gordon filed her EEOC charge on April 19, 2012, but did not apply for disability retirement until January 2013, and the request was not approved until December 2013. At Gordon's deposition, when asked if she had raised the issue of being forced to take disability retirement in front of the administrative judge, Gordon responded, "I can't recall." (Joint Stmt. Undisputed Facts, Dkt. # 45, Ex. A, Gordon Dep., at 81, ll. 7-12.) Because Gordon's April 2012 charge was filed before she applied for or was approved for retirement based on disability, and Gordon does not point to any record evidence that she amended her charge or otherwise brought the issue to the EEOC's attention during its investigation or the hearing, the Court finds that Gordon failed to exhaust this claim; it is therefore dismissed without prejudice.

In any event, a claim of constructive discharge would not survive summary judgment even if it had been exhausted. A plaintiff asserting that she resigned (here, forcibly retired) due to alleged discriminatory harassment must "show working conditions even more egregious than that required for a hostile work environment claim." *Brooks v. City of Pekin*, No. 18-CV-1334-JES-JEH, 2023 WL 3355320, at *16 (C.D. Ill. May 10, 2023). Gordon does not point to evidence from which a reasonable jury could find the existence of such treatment. Accordingly, the Court would grant summary judgment on this claim to the extent it has been exhausted.

## III. Sex Discrimination

Defendant asserts that Gordon's sex discrimination claim was not exhausted and is therefore subject to dismissal. Even assuming arguendo that Gordon had exhausted the claim, Gordon points to no record evidence whatsoever that she was discriminated against based on her sex. Therefore, no reasonable jury could find based on the evidence presented that Gordon suffered an adverse employment action (again assuming for purposes of this motion that one exists) because of her sex. *Abraham v. Bd. of Regents of Univ. of Wis. Sys.*, No. 15-CV-1116-PP, 2020 WL 1703860, at *13 (E.D. Wis. Apr. 8, 2020) ("[T]he court on summary judgment must consider all admissible evidence to decide whether a reasonable jury could find that

5

the plaintiff suffered an adverse action because of her sex."). To the extent that the claim survives the exhaustion challenge, the Court grants Defendant summary judgment as to this claim.

### IV.     Harassment Based on Age and Disability

The Court addresses Gordon's claims of age and disability discrimination under the Title VII harassment (hostile work environment) framework. *See Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) ("This court has . . . assumed, without deciding, that a hostile work environment claim can be brought under the ADEA."); *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019) (noting that "hostile work environment claims are cognizable under the ADA"); *Minge v. Cook Cnty., Ill.,* No. 20 C 6935, 2022 WL 4551899, at *6 (N.D. Ill. Sept. 29, 2022) ("Because the Seventh Circuit uses Title VII's framework for analyzing hostile work environment claims brought under the ADA and the ADEA, the Court does so here as well."). Plaintiffs pursuing a hostile work environment claim must show that "(1) they were subject to unwelcome harassment; (2) the harassment was based on their [age or disability]; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Walker v. City of Markham*, No. 21 C 2939, 2023 WL 3918965, at *4 (N.D. Ill. June 9, 2023) (citation omitted). At the summary judgment stage, plaintiff need not prove the claim, but must point to a genuine issue of material fact for the jury.

Defendants contend that the purported harassment was neither severe nor pervasive. "A hostile work environment is based on the totality of the circumstances[,]" and courts consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (citation omitted). "[T]o rise to the 'level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship.'" *Minge,* 2022 WL 4551899, at *6 (citation omitted; emphasis in original).

Gordon's assertions of being watched closely and having her work scrutinized by her supervisors would not support a finding by a reasonable jury of a hostile work environment. *See Matthews v. Donahoe*, 493 F. App'x 796, 800 (7th Cir. 2012) ("[The plaintiff's] contention that the Willowbrook supervisors subjected her to a 'hostile work environment' by excessively scrutinizing her work, instructing her to cross wet grass and 'finger' mail, denying her non-union representation, and warning her about her attendance problems, does not show a pattern of threatening or humiliating harassment or a workplace permeated with discriminatory ridicule, intimidation, or insult."). Nor does Gordon's allegation that her supervisors

6

laughed at her and spoke rudely to her in front of her coworkers create a genuine issue for the jury regarding severe and pervasive harassment. *See Bethea v. LaSalle Bank, N.A.*, 287 F. Supp. 2d 877, 881 (N.D. Ill. 2003) ("[C]laims . . . which consist of petty slights and normal workplace frictions . . . do not support a finding that [the plaintiff] was subject to a hostile work environment.").[6]

Gordon's other allegations of harassment include: in January 2010, she was marked absent without leave after a three-day absence and her supervisors asked her for more information to support her request for approved leave during that time;[7] her supervisors demanded that she work outside of her bid assignment and medical restrictions (i.e., no lifting or moving items weighing 10-30 pounds); she was scheduled for a fitness-for-duty exam; and she was "exposed to a harmful atmospheric contaminant/substance at the workplace," (Gordon Decl., Dkt. # 56, Page 18 of 77, ¶ 25), which was painful and caused a rash requiring medical treatment.[8]

Even assuming for purposes of this motion that some or all of the alleged conduct is properly deemed sufficiently severe or pervasive to support a reasonable jury's finding of a hostile work environment, Defendant is entitled to summary judgment on this claim because "the ADA and the ADEA, like Title VII, prohibit severe or pervasive conduct *if it is motivated by a protected characteristic*, notwithstanding the fact that the conduct itself might appear facially neutral." *Minge*, 2022 WL 4551899, at *7 (emphasis added). Gordon has not pointed to any record evidence indicating that the purported harassment by her coworkers or supervisors was based on her age or disability.

## V.     Retaliation/Retaliatory Harassment

"A retaliation claim lies where the plaintiff suffered a materially adverse action because [s]he engaged in protected activity." *Krishnan v. DeJoy*, No. 20 C 5931, 2022 WL 2390939, at *3 (N.D. Ill. July 1, 2022) (citation omitted). The ADA and Title VII treat retaliation claims identically. *Id.* at *3 n.2.

---

[6] In addition to her supervisors, Gordon states that "[m]y co-workers continuously harassed me in the period 2010-2013 with the knowledge of management," which "took no effective corrective action." (Gordon Decl., Dkt. # 56, Page 17 of 77, ¶ 16.) Gordon does not provide any details of the alleged ongoing harassment; thus, there is no evidentiary basis on which to conclude that the purported harassment was severe or pervasive.

[7] Gordon was paid after grieving the lack of payment through her union. (Def.'s Resp. Pl.'s LR 56.1(b) Stmt. Add'l Facts, Dkt. # 59, ¶ 31.)

[8] As already discussed in the background section of this order, after a two-day hearing in which Gordon was permitted to submit evidence and argument, the EEOC administrative judge found none of Gordon's claims to be supported by the evidence.

7

As an initial matter, "plaintiffs [alleging retaliation] must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (emphasis in original). According to Gordon's declaration in response to the motion for summary judgment, within several days of the filing of the April 2012 charge, Gordon's supervisors "wrongfully denied overtime to [her] even though [she] was listed on the available overtime list," and Superintendent T. Fowler "directed [her] to come into work at 2:30 in the morning," despite her usual start time being 5 a.m. (Gordon Decl., Dkt. # 56, Page 17 of 77, ¶¶ 17-21).[9] But Gordon's declaration does not state that the unnamed supervisors or Superintendent Fowler had any knowledge of the EEO charge or provide facts from which that knowledge could be reasonably inferred, nor does Gordon otherwise cite any record evidence to that effect.

Moreover, "to prevail on a retaliatory hostile-work-environment claim, there must be a 'causal link between the protected expression and the adverse action.'"[10]

---

[9] Gordon also asserts in her declaration that after she filed the April 2012 charge, her supervisors continuously spoke to her in a rude and disrespectful manner. (Pl.'s Decl., Dkt. # 56, Page 17 of 77, ¶¶ 17-18.) Because Gordon has personal knowledge of how her supervisors allegedly spoke to her, her declaration in that regard is admissible. The supervisors' alleged rude and disrespectful manner of speaking, however, while regrettable, does not constitute a materially adverse action for purposes of establishing retaliation. *Brown*, 700 F.3d at 1107 (noting that incivility, laughing at plaintiff, and being stared and yelled at were not materially adverse actions for purposes of retaliation claim).

Gordon also asserts that after filing the April 2012 charge, she was reassigned to another building and then later to a different area in her original building. (Pl.'s Decl., Dkt. # 56, Page 18 of 77, ¶ 24.) The only record evidence Gordon points to in support of this assertion is a general citation to the administrative judge's decision. While the administrative judge's decision notes that Gordon's supervisor moved her to a different area in the building in which she was working due to Gordon's supervisors "bothering her," the decision does not specify that the relocation occurred after the filing of Gordon's April 2012 charge. (9/17/2014 EEOC Admin. Judge Dec., Dkt. # 45, Page 55 of 101-Page 56 of 101.) Accordingly, Gordon does not point to evidence from which a reasonable jury could conclude that the move was caused by her April 2012 charge. In any event, Gordon has not shown a genuine dispute that the move constituted a materially adverse action. *Brown*, 700 F.3d at 1106-07 ("Because an adverse employment action . . . must be 'materially' adverse, 'it is important to separate significant from trivial harms'; an action is only adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination.") (citations omitted).

[10] The EEOC administrative judge addressed Gordon's retaliation claim as one alleging discriminatory harassment, (9/17/2014 EEOC Admin. Judge Dec., Dkt. # 45, Page 47 of 101) (stating that Gordon complained she "was subjected to hostile work environment harassment based on her age, physical disability, and in retaliation for prior and current EEO activity")), while Defendant recites the elements of a direct retaliation claim. *See Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) ("To defeat summary judgment,

*McKinney v. Chi. Transit Auth.*, No. 20 C 6093, 2022 WL 2257246, at *15 (N.D. Ill. June 23, 2022) (citation omitted). A causal link is established where retaliation "plays a part in a federal employment decision." *Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022). "Circumstantial evidence of causation may include '(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.'" *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (citation omitted). Gordon makes no effort to demonstrate causation, other than to assert that certain conduct by her supervisors followed her filing of the April 2012 charge. "Suspicious timing alone rarely establishes causation, but if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." S*klyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015). Gordon points to no evidence corroborating a causal link between the alleged conduct by her supervisors and superintendent and her April 2012 charge. "Conclusory assertions of a causal link 'do not constitute evidence.'" *Hughes v. Mayorkas*, No. 21CV01198RLYMJD, 2022 WL 16646454, at *5 (S.D. Ind. Nov. 2, 2022) (quoting *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016)).

Accordingly, even assuming that Gordon suffered materially adverse actions when she was allegedly denied overtime and directed to come into work early, and that the conduct to which she was subjected was objectively severe and pervasive under the retaliatory-harassment framework, Gordon's retaliation claim does not survive summary judgment because she has not pointed to evidence creating a genuine issue of a causal link.

## Conclusion

Ultimately, for both discrimination and retaliation claims, "the question should always be whether the record contains sufficient evidence to permit a reasonable fact finder to conclude that [a prohibited] motive caused the [adverse action]." *Krishnan*, 2022 WL 2390939, at *3 (citation omitted). Assuming for purposes of this motion that Gordon suffered an adverse action, she does not point to any evidence from which a factfinder could conclude that her age, sex, or disability caused the alleged harassment or retaliation. Thus, summary judgment is granted to Defendant on those claims. Gordon's failure to accommodate and

---

[the plaintiff] must offer evidence from which a reasonable jury could find: '(1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.'"). Both claims require evidence of a causal link, so in either case, the analysis and conclusion remain the same.

9

forced retirement claims are dismissed without prejudice for failure to exhaust.[11] Civil case terminated.

Date: July 25, 2023 /s/ Martha M. Pacold

---

[11] For the reasons noted in the analysis, if the forced retirement / constructive discharge claim were deemed to have been exhausted, the Court nonetheless would grant summary judgment in Defendant's favor on this claim.